**DALLAS COUNTY CONSTABLE PRECINCT 5 MICHAEL D. DUPREE, and American States Insurance Company, Appellants,**

v.

**KINGVISION PAY–PER–VIEW, LTD., Appellee.**

**No. 05–05–00601–CV.**

Court of Appeals of Texas, Dallas.

April 5, 2007.

Brian W. Erikson, Quilling, Selander, Cummisky, Clutts & Lownds, P.C., Todd Keith Sellars, Assistant District Attorney, Dallas, for Appellant.

Constable Michael Dupree, Dallas, pro se.

Andrew R. Korn, David M. Diaz, Korn, Bowdich & Diaz, L.L.P., Dallas, for Appellee.

Before Justices WHITTINGTON, FRANCIS, and LANG.

## OPINION

Opinion by Justice FRANCIS.

This appeal involves a writ of execution and allegations that Dallas County Constable Precinct 5 Michael Dupree failed to performed his duty with respect to the writ. After a hearing, the trial court found both Dupree and his surety, American States Insurance Co., liable for the full amount of the underlying judgment and awarded KingVision Pay–Per–View, Ltd. damages and attorney's fees. In separate briefs, both Dupree and American States challenge the trial court's order.

For the reasons set out below, we conclude there is no evidence that American States was the surety on Dupree's bond. Accordingly, we reverse the trial court's order holding American States liable and render judgment that KingVision take nothing against American States. Further, we conclude there is no basis for the award of attorney's fees and delete the attorney's fees from the order. We affirm the order in all other respects.

KingVision sued Eduardo Ortega, individually and d/b/a El Burrito Restaurant, alleging he intercepted its broadcast of a championship boxing match and aired it.

When Ortega failed to answer the suit, KingVision took a default judgment of $212,500, which included $42,500 in attorney's fees. KingVision then obtained a ninety-day writ of execution, which it delivered to Constable Dupree's office on May 14, 2004. Some 122 days later, the writ was returned "nulla bona," with the deputy constable asserting he was "[u]nable to make contact with judgment debtor and no property located within Dallas County Texas subject to execution."

KingVision filed a motion to recover the full amount of the judgment under sections 34.064 and 34.065 of the Texas Civil Practice and Remedies Code, alleging Dupree failed and refused to levy on the writ when property was available and neglected or refused to return the writ as required by law. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 34.064–.065 (Vernon 1997). KingVision asserted, and attached documentary evidence, that Ortega owned three parcels of real property (a condominium and both sides of a duplex) and four vehicles during the time Dupree had the writ. It also presented a timetable of actions by Dupree's office that it contended showed neglect of the writ. Dupree filed an answer generally denying the allegations and raising affirmative defenses. Although served with the motion, American States did not respond or appear at the hearing on the motion.

At the hearing, the trial judge determined KingVision had made a prima facie case and then heard evidence on Dupree's affirmative defenses of no property/due diligence. Deputy Constable Ronald Bostic testified he received the writ of execution on May 14, 2000 and made his first, and last, attempt to execute on the writ twenty-five days later, on June 8. He had been provided with the addresses of Ortega's restaurant, the condominium, and duplex. Bostic said he went to El Burrito Restaurant to contact Ortega but was told Ortega was out of the country, could not be contacted, and that the restaurant was under new ownership. Bostic said he was shown a Certificate of Authenticity and a tax statement showing new owners so he did not seize any of the restaurant property. He also went to the duplex and condominium, but Ortega was not at those locations.

Bostic said he was aware of real and personal property owned by Ortega at the time he held the writ. However, he testified he did not seize the vehicles because he was not able to locate them at any of the locations he visited. Moreover, he did not sell or attempt to sell any of the non-exempt real property owned by Ortega because his department, as a matter of practice, did not levy on and sell real property but would refer the creditor's attorney to the sheriff's department. Consequently, Bostic determined "there were no assets to seize or collect."

On cross-examination, KingVision produced evidence that another Precinct 5 deputy constable did locate Ortega, just six weeks after this writ expired, to serve him with a forcible detainer complaint. Ortega was served with the lawsuit at a second restaurant. KingVision questioned Bostic about that restaurant and whether El Burrito personnel told him that Ortega "had another restaurant." Bostic said he was not aware of the second restaurant. When asked if he ran Ortega's name in any of the county or comptroller databases, Bostic said he did but could not recall which ones.

Bostic was also cross-examined about the lack of backup information in the file to confirm any actions he took regarding the writ; in fact, Bostic acknowledged that the backup documentation (a Central Appraisal District printout showing the condominium had a homestead exemption and

an assumed names printout) offered as evidence at the hearing was retrieved after KingVision filed this motion. Additionally, KingVision produced a copy of Dupree's internal file on this writ, obtained through an open records request shortly after the writ was returned nulla bona, to compare with the file as it was on the day of the hearing. The later file showed many entries on the cover that were not on the earlier file. KingVision argued that the differences in the two files were proof that Dupree's office did not "make the contacts when they said they did during the time the writ was pending" and instead the information was "researched on the back door when they were trying to prove that the debtor was insolvent." Other witnesses, including Dupree, also testified, but their testimony was primarily limited to the issue of whether Dallas County constables levy on real property.

Following the hearing, the trial judge took the case under advisement and ultimately found all issues in KingVision's favor. In written findings, the trial judge found that (1) Ortega had property subject to execution in Dupree's jurisdiction when Dupree had the writ; (2) Dupree was aware of certain of Ortega's non-exempt assets and could have seized them but did not; (2) Dupree failed and refused to seize and levy on Ortega's non-exempt property; (3) Dupree failed to establish that any of Ortega's property was exempt from execution; (4) Dupree failed to exercise diligence; and (5) KingVision was harmed by Dupree's failure to execute. The trial judge also concluded, among other things, that constables have a duty to levy upon real property. The trial judge ordered that KingVision recover from Dupree and American States, jointly and severally, the full amount of the judgment, interest, court costs, and attorney's fees. Dupree and American States filed separate appeals complaining of the trial court's order. We begin with Dupree's appeal.

Section 34.065 of the Texas Civil Practice and Remedies Code provides:

> If an officer fails or refuses to levy on or sell property subject to execution and the levy or sale could have taken place, the officer and his sureties are liable to the party entitled to receive the money collected on execution for the full amount of the debt, plus interest and costs. The total amount is recoverable on motion of the party filed with the court that issued the writ, following five days' notice to the officer and his sureties.

TEX. CIV. PRAC. & REM.CODE ANN. § 34.065.

Courts generally have not interpreted this statute literally; rather, consistent with the assumptions that the debtor is solvent and the plaintiff in execution has suffered an injury due to the officer's breach of duty, courts have allowed several defenses and matters in avoidance. *See Hickey v. Couchman,* 797 S.W.2d 103, 107 (Tex.App.-Corpus Christi 1990, writ denied) (citing *Cobbs v. Coleman,* 14 Tex. 594 (1855) (sheriff may defend by proving debtor's assets are exempt) and *Underwood v. Russell,* 4 Tex. 175 (1849) (sheriff may defend by proving he exercised due diligence)).

■ To establish liability under the statute, a plaintiff in execution must show a valid judgment issued and delivered to the officer, the debtor had some property "subject to execution" (i.e. ownership of non-exempt assets), the officer failed to seize non-exempt property, and the judgment remains unpaid. *See Hickey,* 797 S.W.2d at 107. After the plaintiff has made out a prima facie case, the burden shifts to the defendant to prove one of the defenses or mitigation. *Id.*

In issues one through three, Dupree challenges the legal and factual sufficiency of the trial judge's findings on his affirmative defenses that, with respect to personal property only, he was diligent and acted in good faith and that there was no non-exempt personal property that could have been recovered. Within these issues, Dupree expressly excludes real property from his discussion and affirmatively states that he is not challenging the trial judge's conclusion that constables in Texas have a duty to levy upon real property. Finally, he concedes in his brief that there was real property belonging to Ortega that could have been levied upon but was not.

■ Whether Dupree met his burden of proof with respect to Ortega's personal property is not dispositive. To establish Dupree's liability, KingVision was only required to show Ortega owned non-exempt assets subject to execution. Dupree admits that Ortega owned non-exempt assets, i.e. real property, that he failed to levy upon. Given these circumstances, Dupree cannot show the trial judge's order was in error even if he could show, as a matter of law, that there was no non-exempt personal property subject to execution or that he was diligent or acted in good faith as to the personal property. Issues one through three are without merit.

■ In his fifth issue, Dupree argues the trial judge erred in awarding damages in the full amount of the judgment. Specifically, he contends that if he is liable at all, it is only to the extent of the value of the non-exempt assets. We will treat Dupree's issue as challenging the legal and factual sufficiency of the evidence to support the adverse implied finding on his defense.

■ When a party with the burden of proof challenges the legal sufficiency of an adverse finding, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *Long v. Long*, 196 S.W.3d 460, 466 (Tex.App.-Dallas 2006, no pet.). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, then we will examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.*, 46 S.W.3d at 241; *Long*, 196 S.W.3d at 466. The issue should be sustained only if the contrary proposition is conclusively established. *Dow Chem.*, 46 S.W.3d at 241; *Long*, 196 S.W.3d at 466.

■ When reviewing the factual sufficiency of the evidence supporting an adverse finding on which the party had the burden of proof, the appellant must show that "the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 241; *Long*, 196 S.W.3d at 466.

■ Under section 34.065, if an officer failed or refused to levy on property subject to execution and the levy could have taken place, the officer and his sureties are liable for the full amount of the debt, plus interest and costs. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 34.065. However, a mitigation defense is available to reduce the amount of damages. To establish this mitigation defense, the officer must plead and prove that the market value of the defendant's non-exempt property is less than the amount of the underlying judgment. *See Abercia v. KingVision Pay–Per–View, Ltd.*, 217 S.W.3d 688, 698–99 (Tex.App.-El Paso 2007, no pet. hist.); *Hickey*, 797 S.W.2d at 108. If the officer satisfies this burden, then he is liable only to the extent of the value of the non-exempt property. *See Abercia*, 217 S.W.3d at 698–99; *Ko v. Chin*, 934 S.W.2d

839, 841 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Hickey,* 797 S.W.2d at 108.

In his answer, Dupree pleaded that Ortega had no property subject to execution; alternatively, he pleaded that Ortega "did not have sufficient property subject to execution in Dallas County to pay the judgment." At the hearing, Dupree defended the motion on the theory that, despite his diligent efforts, there was no property subject to execution because (1) he could not find the vehicles and (2) his office had a policy not to levy on real property. He did not urge his alternative "insufficient property" defense; consequently, we question whether he has preserved his mitigation of damages defense.

But even assuming the issue is preserved, Dupree cannot obtain a reversal of the judgment unless he shows on appeal that he conclusively established his defense. *See Dow Chem.,* 46 S.W.3d at 241; *Long,* 196 S.W.3d at 466. We note the trial judge made no findings with respect to this defense; therefore, we will treat his issue as attacking an implied finding.

Ortega did not testify at the hearing, and Dupree offered no evidence of the value of Ortega's non-exempt property. Apparently in recognition of his failure to present evidence on this issue in the trial court, Dupree relies on evidence offered by KingVision to prove its prima facie case that non-exempt property existed. Included in this evidence was the appraised values of the real property by the Dallas County Central Appraisal District and the sales prices of the vehicles. Assuming all of these properties are non-exempt, their combined value is less than $212,500. But, contrary to Dupree's argument in its motion for new trial and suggestion in its appellate brief, the law does not require that KingVision prove that $212,500 in non-exempt property existed nor does it require that KingVision produce evidence of *all* the non-exempt property on which Dupree failed to levy. Rather, to avoid the harsh results of the statute, it was Dupree's burden to establish that the value of Ortega's non-exempt property was less than the amount of the underlying judgment. Dupree offered no evidence, much less conclusive proof, of the value of all non-exempt properties owned by Ortega during the life of the writ. *Cf. B.F. Goodrich Rubber Co. v. Valley Plumbing Supply Co.,* 267 S.W. 1036, 1038 (Tex.Civ. App.-Waco 1924, no writ) (explaining that when relying on no injury defense, mere insolvency of defendant not sufficient; rather, officer "should show there was no property belonging to the defendant subject to execution within his official jurisdiction out of which plaintiff's judgment, or any part thereof, could have been made"). Having failed to do so, his legal sufficiency challenge fails. Moreover, Dupree has not shown that the implied finding is against the great weight and preponderance of the evidence; thus, his factual sufficiency claim fails. We overrule Dupree's fifth issue.

The sixth issue addresses the trial judge's award of attorney's fees. In his order, the trial judge awarded KingVision $5000 for reasonable attorney's fees and expenses for preparing and presenting the motion. In a footnote in the order, the trial judge found the award was appropriate under either section 34.064 or 34.065 of the civil practice and remedies code; as a sanction under the court's inherent power; or in connection with the prosecution of civil contempt. Dupree argues the award was error. We agree.

 In Texas, attorney's fees may not be recovered by an opposing party unless such recovery is provided for by statute or by contract between the parties. *Travelers Indem. Co. of Conn. v. Mayfield,* 923 S.W.2d 590, 593 (Tex.1996) (orig. pro-

ceeding). The authorization of attorney's fees in civil cases may not be inferred; rather it "must be provided for by the express terms of the statute in question." *Id.* Moreover, absent a contractual or statutory authority, a trial court lacks authority to award attorney's fees based on a finding of contempt. *Kennedy v. Kennedy,* 125 S.W.3d 14, 23 n. 4 (Tex.App.-Austin 2002, pet. denied); *Equitable Trust Co. v. Lyle,* 627 S.W.2d 824, 826 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.).

The statutes relied upon by the trial court to award attorney's fees do not expressly provide for such recovery; thus, any award based on either statute was error. Likewise, any award based on a contempt finding was improper, which leaves the court's inherent power as the only possible basis for the award.

We review a trial court's imposition of sanctions for an abuse of discretion. *In re Bennett,* 960 S.W.2d 35, 40 (Tex.1997); *Toles v. Toles,* 45 S.W.3d 252, 266 (Tex.App.-Dallas 2001, pet. denied). Under an abuse of discretion standard, we review the entire record to determine if the trial court acted arbitrarily and unreasonably and thus abused its discretion. *Toles,* 45 S.W.3d at 266.

A trial court has certain inherent power derived "from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities." *Travelers Indem.,* 923 S.W.2d at 594 (quoting *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 (Tex. 1979)). A court may call upon its inherent powers "to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Id.* The trial court has inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the court's administration of its core functions, including hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, entering final judgment, and enforcing that judgment. *Id.*

In *Travelers Indemnity,* the supreme court addressed an argument that the trial court had inherent authority to award attorney's fees, not authorized by statute, to the opposing party's appointed counsel. *Travelers Indem.,* 923 S.W.2d at 594. The court concluded there was no showing that the trial court could have only carried out its constitutional function by imposing "this fee burden" on the opposing party. In the absence of such a showing, the court explained, "allowing trial courts to exercise this power under the guise of 'inherent authority' would constitute a judicial end-run around the statutory fee-shifting scheme." *Id.*

Here, the trial judge made a finding that Dupree, through his acts and omissions, "failed to exercise diligence and caused significant interference with the legitimate exercise of a traditional core function of this Court, namely the enforcement of the Judgment." Although he did not specify any particular conduct, the judge clearly sanctioned Dupree for the same acts and omissions contemplated in sections 34.064 and 34.065, which already provide a penalty that does not include recovery of attorney's fees in prosecuting the motion. There was no showing that the trial court could have only carried out its constitutional function by imposing attorney's fees in this case. As in *Travelers Indemnity,* allowing the trial judge to exercise his "inherent authority" in this instance and order payment of attorney's fees not allowed by the statute would constitute "a judicial end-run" around the statutory scheme in place. We therefore

conclude the award of attorney's fees under the trial court's inherent powers was improper. Because there is no basis for the award of attorney's fees in this case, the trial court erred in awarding them. Accordingly, we sustain the sixth issue and delete the award of attorney's fees from the order.

In two issues raised in a supplemental brief, Dupree challenges supplemental finding of fact and conclusions of law made by the trial judge more than five months after making his original findings and well after the case was on appeal. In the supplemental findings and conclusions, the trial judge determined that Dallas County was responsible for the payment of the amounts awarded against Dupree.[1]

We need not address the correctness of this conclusion because Dallas County was not a party to the proceeding below and, most importantly, is not named in the judgment. Consequently, any findings made by the trial judge with respect to Dallas County do not impact the judgment nor are they relevant in this appeal. We overrule supplemental issues one and two.

### SURETY'S APPEAL

We next address American State's appeal. In four issues, American States contends (1) there is no evidence to establish that it was surety on Dupree's bond; (2) it was not required to appear and answer KingVision's motion; (3) any liability must be limited to $1500, the amount of the bond; and (4) American States's liability is derivative and it cannot be liable unless Dupree is also liable.

■■■ American States filed a restricted appeal. To obtain relief by restricted appeal, American States must show: (1) notice of appeal was filed within six months of the judgment; (2) it was a party to the litigation; (3) it did not appear at the hearing or file any timely post-order motion; and (4) there was error apparent on the face of the record. *See Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex.1997) (per curiam); TEX. RS.APP. P. 26.1(c) and 30. The only dispute here is whether there was error on the face of the record.

■■■ In a restricted appeal, we are limited to considering only the face of the record, but our scope of review is otherwise the same as that in an ordinary appeal; that is, we review the entire case. *See Norman Commc'ns*, 955 S.W.2d at 270. The face of the record, for purposes of restricted appeal review, consists of all the papers on file in the appeal, including the reporter's record. *Id.* Thus, it necessarily follows that review of the case includes legal sufficiency. *Id.* In a legal sufficiency review, we view the evidence in a light most favorable to the judgment and indulge every reasonable inference to support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex.2005).

In its first issue, American States argues KingVision cannot recover against it because KingVision did not introduce the bond into evidence at the hearing and therefore there is no evidence that it is Dupree's surety. In response, KingVision argues there is evidence that American Insurance is Dupree's surety because the trial judge took judicial notice of the constable's bond.

---

1. After this case was orally argued and submitted, Dupree's counsel filed a motion to withdraw, asserting that an "irreconcilable conflict of interest exists." On this date, simultaneously with the issuance of this opinion, we granted the motion to withdraw.

The record shows that KingVision served its Motion to Recover Full Amount of Judgment on American States, and the first paragraph of the motion seeks an order against both Dupree and American States. American States did not respond to the motion nor did it appear at the hearing. At the hearing, KingVision's counsel approached the trial judge with the constable's bond and stated, "And the Court can take judicial notice of the constable's bond." The judge did not respond, but later Dupree's lawyer questioned Dupree about the bond:

[COUNSEL]: As an elected constable, you do have a bond. Is that not correct?

[DUPREE]: Correct.

[COUNSEL]: And how much is that bond for?

[DUPREE]: $1,500.

[COUNSEL]: And do you know whom? If you don't just say you don't.

[DUPREE]: I really don't know the name, because my office doesn't process that bond.

[TRIAL JUDGE]: *I have a copy of it here.*

[COUNSEL]: *Okay. If that's the case, it's a matter of record.*

Shortly thereafter, during KingVision's cross-examination of Dupree, the following occurred:

[KINGVISION'S COUNSEL]: Constable, do you—You said you had one surety. Do you have more than one surety, or just one surety?

[DUPREE]: I really don't know, sir.

[TRIAL COURT]: I think the law requires one, $1500 payable to the governor. Does it? Does it not?

[KINGVISION'S COUNSEL]: Two or more.

[TRIAL COURT]: Oh, is it two or more? Okay. Oh, I see what you're saying. Okay. One bond with two sureties. That's—I guess.

[KINGVISION'S COUNSEL]: Yeah. It says two or more sureties.

[TRIAL COURT]: All right.

[KINGVISION'S COUNSEL]: Your Honor, let me just go into, then—

[TRIAL COURT]: Well, I'm going to give you—

[KINGVISION'S COUNSEL]: Your oath, your bond is supposed to be affixed to your oath. Correct?

[DUPREE'S COUNSEL]: If I may Judge, object. This was covered towards the judge's decision as to whether or not to allow [evidence of] due diligence in the first place. In that regard, it covers the same territory Your Honor has already ruled on in the first place. What he's getting at is Constable Dupree is, in fact, not a constable at all, and you've already, in effect, ruled on that for purpose of allowing the due diligence.

[TRIAL COURT]: Well, I haven't ruled on that at all. I said he made a prima facie case.

[DUPREE'S COUNSEL]: You allowed him to continue. Pardon me.

[TRIAL COURT]: Right.

[KINGVISION'S COUNSEL]: And Judge, besides that, I'm also offering it to show, because there's been, on direct, some inference that the man—the office is also diligent. I think it goes to the credibility that when you don't know what your own oath and bond look like, then probably the rest of your paperwork may not be quite so neat either. It's an important document. I would think he'd know a little bit more about it.

[TRIAL COURT]: Well, I think it's a little tenuated [sic], Mr. Korn, so I'm going to sustain the objection. I am not

going to pass on Constable Dupree's validity, whether he's legally a constable or not. That's not really what we're here to decide.

Move on, please.

*I have the bond in front of me, if that helps.*

■ Texas Rule of Evidence 201 provides that a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. TEX.R. EVID. 201. If a party requests a trial judge to take judicial notice of a document, that party should ensure the court reporter marks the document as an exhibit and includes it in the appellate record. *See Kaman v. State*, 923 S.W.2d 129, 131 (Tex.App.-Houston [1st Dist.] 1996, no pet.).

■ In this case, KingVision argues that because the constable's bond must be deposited and recorded in the county clerk's office, it is a public record and an appropriate subject for judicial notice. Assuming without deciding (1) KingVision is correct and (2) the trial judge took judicial notice of a "bond," there is nothing in this record to establish the particulars of the "bond."

Our record does not contain the constable's bond. The trial judge never recited any facts that he judicially noticed, nor did KingVision recite any particular fact that it wanted judicially noticed. Certainly, the contents of the bond were never specified and, in particular, the identity of the surety. In sum, there is no evidence in this record that American States was the surety on Dupree's bond. Accordingly, we sustain the issue. Our disposition of this

issue makes it unnecessary to address American States's remaining issues.

We reverse the trial judge's order holding American State's liable and render judgment that KingVision take nothing against American States. Further, having determined that there is no basis for the award of attorney's fees and that American States's liability is limited to the amount of its bond, we delete the attorney's fees award. We affirm the trial court's order in all other respects.