

*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★



# MEMORANDUM OPINION

No. 04-11-00716-CV

Ray A. **BASALDUA**,
Appellant

v.

**FOREST WOODS SUBDIVISION PROPERTY OWNERS ASSOCIATION, INC.**,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 10-06-20088-CV
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  July 5, 2012

AFFIRMED

This appeal arises from a traditional summary judgment rendered in favor of appellee and from an order sanctioning appellant for failing to attend court-ordered mediation. We affirm both the summary judgment and the sanctions order.

## BACKGROUND

Appellee, Forest Woods Subdivision Property Owners Association, Inc., is a non-profit property owners' association (the "association"). The developer of the subdivision known as

Forest Woods filed in the Medina County property records a "Fourth Amended Declaration of Limitation and Restrictions for Forest Woods Subdivision Phase Two" ("the restrictive covenants"). The restrictive covenants set forth a variety of "covenants, conditions, restrictions, and limitations which shall apply to and become a part of all contracts for sale, contracts for deed, deeds, and other legal instruments whereby title or possession to any lot" in the subdivision is conveyed or transferred. Among the restrictions is the requirement that "[a]ll plans and specifications [related to permanent homes and buildings] are subject to the prior written approval of the Architectural Committee." Another requirement is that additional improvements and structures "shall be subject to the prior written approval of the Architectural Committee." Finally, the restrictive covenants provide that thirty days written notice be given to a property owner of any violation of the restrictions, and, following the thirty days, the restrictions could be enforced through a legal proceeding or in equity, with any owner found in violation subject to payment of all reasonable expenses and attorney's fees. Because he is a property owner in Forest Woods, appellant is a member of the association and his property is subject to the restrictive covenants.

On September 4, 2009 and November 25, 2009, the association's management company notified appellant that he had a shed and a cabin on his property that had not been approved by the Architectural Committee and he was provided with forms to complete in order to obtain such approval. On April 1, 2010, appellant was notified the forms had not been received, and he was asked to submit the appropriate forms for approval. On April 28, 2010, appellant was sent a "Notice of Intent to File Suit," in which appellant was again given the opportunity to bring his property into conformity with the restrictive covenants, and appellant was notified that continued

and further violations would force the association to institute a lawsuit against him. On June 9, 2010, the association sued appellant. The association asked for declaratory and injunctive relief.

Approximately one year later, the trial court twice ordered the parties to mediation with Mr. John Chunn. Appellant was ordered to pay Mr. Chunn $375.00 in mediation costs. Appellant did not appear at either scheduled mediation, and he did not pay his share of the mediation cost. The association filed a motion for sanctions based on appellant's failure to comply with court-ordered mediation, and later filed a motion for summary judgment on its underlying causes of action. Both motions were granted and this appeal ensued.

## SUMMARY JUDGMENT

In its motion for summary judgment, appellee sought a declaratory judgment that appellant had violated the restrictive covenants, damages pursuant to Texas Property Code section 202.004(c), fees and costs, and the appointment of trustees for the purpose of conducting a non-judicial foreclosure of appellant's property if appellant failed to pay the judgment and any special assessment and remained in default for ninety days. The trial court granted all requested relief.

On appeal, appellant asserts the summary judgment grants more relief than allowed by law because the judgment includes language allowing the association to foreclose on his property. Appellant contends the summary judgment improperly allows the association to foreclose because the summary judgment "consists solely of a covenant violation lien and attorney's fees incurred for a covenant violation." Appellant argues this is in violation of Property Code section 209.009, which prohibits foreclosure of a property owners' association's assessment lien "if the debt securing the lien consists solely of: (1) fines assessed by the association; (2) attorney's fees incurred by the association solely associated with fines assessed

by the association; or (3) amounts added to the owner's account as an assessment under Section 209.005(i)." *See* TEX. PROP. CODE ANN. § 209.009 (West 2011). Appellant's reliance on section 209.009 is misplaced because the lien at issue here is not an assessment lien. Instead, it is a judgment lien. Therefore, the summary judgment did not provide more relief than allowed by law.

Appellant also asserts the trial court abused its discretion in granting the association's motion for summary judgment because the association did not have sufficient evidence to conclusively establish its claim and the trial court admitted on the record it had not reviewed the summary judgment motion or summary judgment evidence. Appellant also complains the court improperly granted the association's oral request for a trial amendment, and this request is an admission that the pleadings are insufficient for summary judgment.

During the hearing on the motion for summary judgment, the trial court admitted it had not yet reviewed the motion or evidence; however, following arguments, the court granted the motion. Any error by the trial court in not reviewing the motion and evidence was harmless because this court reviews a traditional summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). We consider the evidence in the light most favorable to the non-movant and indulge all reasonable inferences and resolve any doubts in the non-movant's favor. *Id.* at 157. We will affirm a traditional summary judgment only if the movant established there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *Id.*

Appellant also complains the trial court improperly shifted the burden of proof to him. It is true a non-movant is under no initial obligation to respond to a traditional motion for summary judgment. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999). However, if

the movant conclusively establishes its cause of action, the burden shifts to the non-movant to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *Id.*

In its summary judgment motion, the association alleged appellant violated the restrictive covenants by constructing a shed/cabin on his property and a second structure on his property without obtaining the appropriate approval. The association included photographs of the structures. The summary judgment evidence also includes a copy of the restrictive covenants, a copy of appellant's deed of trust, and a "Notification" signed by appellant in which he acknowledged that he was purchasing property that was part of a mandatory neighborhood association subject to the restrictive covenants. The restrictive covenants contain a provision establishing the Architectural Committee for the purpose of ensuring compliance with the covenants. This same provision states that upon activation of the property owners' association, with certain exceptions not applicable here, all rights, duties, and responsibilities of the committee shall be transferred to and vested in the association's board of directors, "whereupon the Architectural Committee shall be and is hereby abolished." At some point in time, the property owners' association was activated, thereby abolishing the Architectural Committee and the association became vested with the rights, duties, and responsibilities of the committee. The "Notification" signed by appellant also states appellant must "submit all exterior improvements to the property, including new construction, to the Association's Architectural Control Committee . . . ." Finally, nothing in the summary judgment record controverts the association's assertion that appellant failed to seek or obtain approval for the two structures.

The Texas Property Code sets forth various powers of property owners' associations, including the right to "institute . . . litigation . . . on matters affecting the subdivision." TEX.

PROP. CODE ANN. § 204.010(a)(4) (West 2007). In addition to the photographs of the offending structures, the summary judgment evidence includes copies of the two notices sent to appellant informing him he was in violation of the restrictive covenants and providing him time in which to either cure or dispute the violation. *See id.* § 209.006 (stating notice requirements before a property owners' association may file suit). Finally, the summary judgment evidence includes a copy of the "Notice of Intent to File Suit" sent to appellant pursuant to the restrictive covenants, which again offered appellant the opportunity to cure or dispute the violations, and informed appellant of the association's intent to sue him if he did not respond within thirty days. *See id.* § 209.007(a) ("If the owner is entitled to an opportunity to cure the violation, the owner has the right to submit a written request for a hearing to discuss and verify facts and resolve the matter in issue . . . .").

Our review of the summary judgment record—even in the light most favorable to appellant—leads us to conclude the association conclusively established its cause of action and appellant did not respond with any evidence raising a genuine issue of material fact. Therefore, we conclude the trial court did not err in rendering summary judgment in favor of the association.[1]

## SANCTIONS

The trial court sanctioned appellant for his failure to attend court-ordered mediation, ordered appellant to pay $750.00 for the expenses and costs incurred by the association on the two dates mediation was scheduled, and ordered appellant to pay $2,000.00 in costs and attorney's fees to the association as reasonable expenses. In his final issue, appellant asserts the

---

[1] Appellant's argument regarding the association's request for a trial amendment is without merit because the trial court did not grant the request for an amendment.

trial court erred in sanctioning him because he objected to mediation, made it clear mediation would be involuntary, and he had no money to pay the mediation costs.

We review a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). In reviewing the imposition of sanctions, the appellate court examines the entire record, including "evidence" admitted at the hearing, arguments of counsel, the written discovery on file, and the circumstances surrounding the sanctioned party's alleged conduct. *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 574 (Tex. App.—San Antonio 2011, no pet.).

A trial court has inherent power to impose sanctions. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997). Assessing sanctions under the trial court's inherent powers involves a two-step process: (1) the trial court should rely upon the rules and statutes expressly authorizing sanctions whenever possible, and (2) the trial court, applying its inherent power to impose sanctions, must make factual findings, based on evidence, that the conduct complained of significantly interfered with the court's legitimate exercise of its core functions. *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.) (considering sanctions for discovery abuse); *Ezeoke v. Tracy*, 349 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (considering sanctions for, in part, party's failure to comply with local rule requiring pretrial mediation).

Inherent power to sanction exists where necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of the court. *See Greiner v. Jameson*, 865 S.W.2d 493, 499 (Tex. App.—Dallas 1993, writ denied); *Lawrence v. Kohl*, 853 S.W.2d 697, 700 (Tex. App.—Houston [1st Dist.] 1993, no writ). The core functions of a trial court include hearing evidence, deciding issues of fact raised

by the pleadings, deciding questions of law, rendering final judgments, and enforcing judgments. *See Dallas Cnty. Constable Precinct 5 v. KingVision Pay–Per–View, Ltd.*, 219 S.W.3d 602, 610 (Tex. App.—Dallas 2007, no pet.). A trial court's core functions also include the management of its docket and the issuance and enforcement of its orders. *In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The trial court may issue orders and, when it deems appropriate, vacate, rescind, or modify those orders. *Id.* Lawyers and the litigants do not have such authority. *Id.* The failure to comply with a trial court's order to participate in mediation constitutes significant interference with the court's core functions and, therefore, can support an award of sanctions imposed under the court's inherent power to sanction. *Id.*

It appears appellant was twice ordered to attend mediation by Judge Camille DuBose (who later recused herself); one mediation to occur on July 7, 2011 and the second on September 7, 2011. Appellant did not appear at either, and the association moved for sanctions. At the hearing on the motion for sanctions, appellant explained he did not attend the first mediation ordered by Judge DuBose because he believed that when Judge DuBose voluntarily recused herself from the case, that recusal relieved him of the obligation to attend mediation. He also stated he was in favor of mediation, but could not afford the mediation costs and he did not understand what issues were to be mediated. After hearing arguments from both appellant, who appeared pro se, and the association's attorney, the trial court found that appellant "did not comply with Judge DuBose's orders to participate in mediation. I've heard nothing to excuse you; and so you failed to comply with those orders." In its sanctions order, the trial court stated that appellant "be sanctioned by this Court for failure to comply with the Court's Order regarding mediation in this matter."

The record contains sufficient evidence to support the trial court's finding that appellant twice failed to attend mediation and, by doing so, violated the court's orders. "When [appellant] chose to cancel the court-ordered mediation, [he] effectively usurped the court's role and displaced the court as decision maker. By taking it upon [him]self to countermand that which the court had ordered, [appellant] interfered with a core function of the court." *Id.* Accordingly, we conclude the trial court did not err by imposing sanctions against appellant.

## CONCLUSION

We affirm the trial court's Order Granting Plaintiff's Motion for Summary Judgment, and we affirm the trial court's September 12, 2011 Order Granting Motion for Contempt and Sanctions.

Sandee Bryan Marion, Justice